All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Thank you very much, and thank you for your patience, everyone, this morning as we worked out a few technical glitches. We're ready to call the first case for argument on the calendar this morning, which is Acosta v. Labor's International Union of North America, Local 872. If Counsel for Appellant is ready to proceed, we'll hear from you. David Rosenfeld, on behalf of the Appellant, Labor's Local 872, I'd like to reserve three minutes for rebuttal. This is an interesting experiment for me, as it is everyone else. I always enjoy going into the courthouse in Pasadena, San Francisco, because it makes a lot of difference, but in my office will work. So we're only here, I think, because the district court delayed in issuing its decisions in this case. And if I may take a minute to explain, that I think will help us figure out a resolution of this case. So this first election was conducted in May of 2015. Secretary investigated it and filed the complaint against the union in 2015. The parties filed cross motions for summary judgment in early 2017 and were submitted to the judge who didn't issue her decision until August of 2017. Now, that was timely to resolve the issues for the May 2018 next election. And the parties could have resolved their problems because the statute requires that the election go forward even if an appeal is filed. What happened was both parties were not happy with the judge's decision and filed motions for reconsideration in October of 2017, which were then submitted. Unfortunately, the union was put in a difficult position because we had already told the secretary, come and supervise our next election, no problem. And the secretary had filed papers in his motion agreeing to that they would supervise the next May 2018 election. So we were on track to have their supervision, but both parties had filed their motions for reconsideration. We were asking the court to reconsider because she had declined to decide Mr. Trujillo's eligibility with respect to his failure to timely produce his documents in support of his eligibility. The government, on the other hand, the secretary, on the other hand, had filed the motion because the secretary said, look, the judge seems to have authorized the continuance of the literacy requirement that the candidate be literate. And we don't think that that's appropriate. And the judge sat on this until September of 2018, which was long after the election. So the union was put in the impossible position because the statute requires that we conduct an election every three years. And had we not conducted that election in May of 2018, it would have been subject to rerun. So we told the secretary, you've already agreed to rerun the election. Come and supervise it. And then the RJN details all the efforts we made beginning in January of 2018 to ask the secretary to come and supervise the election. And the secretary refused on the ground only that we had to waive the literacy requirement in our constitution, which we weren't prepared to do. We said, you provide whatever test. You run the election. You make the decisions. Just let us have that test out there. And we said, we don't think it's ever going to be another issue because this was the first time that literacy test had ever been an issue. But we wanted to preserve it for reasons that I think are clearly explained in our brief, that we can't function as a union if our chief officers can't at least read what are usually complicated legal documents. So the secretary refused to conduct the election, refused to supervise it, even though the judge had ordered the election to be supervised. We had to go through with the election. We did it because otherwise, as I said, we would have been subject to another challenge. Conducted the election. And then the secretary comes back in in May of 2018 and investigates the election. So that election investigation takes some time. And finally, in March of 2019, the secretary issues letters clearing the election saying it was OK, no problem. At which point we filed our motion, our RJN, saying, look, the secretary declined to conduct a new election. And then the secretary even investigated the election, gave it a clean bill of health so we shouldn't have to have a rerun election. So we're here, unfortunately, because had the judge issued her motion, her decision on reconsideration timely, then the secretary would have known that the court was approving the continuation of the literacy requirement. And we would have known one way or the other whether Trujillo's disqualification was valid. So ultimately, she said Trujillo's disqualification was invalid on two grounds. Had that decision come out in February of 2018, we would have known there was a rerun election. And the judge also reaffirmed her view that the union could maintain a literacy requirement for these kinds of offices. Counsel, let me jump in because I think all of us, all three of us are familiar with that chronological history. And at least I'm willing to agree with you that, yes, it would have been much better had the district court ruled earlier so that the issue that was preventing a resolution between you and the secretary could have been taken off the table earlier. But that didn't happen, obviously. And the only argument I recall from your briefs that what you just said relates to is this question of, well, even if the, I'm just going to call it, for short term, do we call it the residency requirement? What do you want to call it? Well, it's the proof of residency. It's more actually eligibility to serve. Whatever we want, let's call it proof of residency. You know, I think your argument in your brief is simply that even if that was a problem here, that the remedy of rerunning the election now is not equitable, right, given this history that you just outlined and the secretary's refusal to supervise the 2018 election. And I guess I just wasn't sure what authority do we have if we were to agree with the secretary on both of these provisions being problematic. What would be the authority for our court to say, but never mind, the 2018 election was fine and there's no need to rerun the election at all? Well, the authority is how we interpret Wirtz and the cases since then, including the bakery case in the circuit, which are pretty clear. And I understand that, that when the union goes ahead and conducts an election, it doesn't moot the secretary's right to supervise the election. However, as we've detailed in our brief, this case we think is different because we asked the secretary to supervise the election. The secretary declined on the basis that the district court in its motion, its order on reconsideration rejected. Now, the secretary said, we won't conduct it because we want to do away or eliminate the literacy requirement. And for the second time in 2018, when the judge issued her order on reconsideration, she rejected it. Number two, the statute requires that the election be conducted. The statute in 482D says that an order dismissing a complaint or ordering a new election is appealable, but it isn't stayed. Mr. Rosenfeld, can I interrupt you for a second? There was an election scheduled in 2021. Yes. Yes, absolutely. What's your position on whether that should be a supervised election? We invite the secretary's supervision. They're welcome to come in and supervise it. So it seems to me that putting aside the merits of the case, which you're not spending very much time on today, and I understand that. Because the literacy requirement remains and you don't really care about whether Mr. Chahil was improperly disqualified because he's not a candidate anymore. Is the only issue of dispute, real dispute between you and the secretary, whether the supervised election should be conducted sometime between now and the next regularly scheduled one, or whether or not it can be done at the next regularly scheduled one? I can't speak for the secretary, but we welcome their supervision of the next regularly scheduled election. Because it's a burden, particularly given the COVID crisis, to do anything between now and when we normally do it. So the question for us is whether or not, and the district court wasn't confronted with any of this because it all occurred after the district court's rulings. Why? Let me propose a course of action and see how your reaction is to it. What if we were to remand to the district court to say, look, the statute requires a supervised election. The fact that one occurred in the meantime doesn't solve it. The secretary has to be able to supervise an election, but you have the discretion under your equity powers to order that it be the next regularly scheduled one.  There's nothing wrong with the resolution assuming the judge then says can supervise the next election. No, no. If she doesn't, then we remain open for business, even if awkwardly. The only problem I've seen, Matt, is the secretary's position whether then when he or she, at this point it's Gene Scalia, walks in to supervise the election, they say you cannot impose or enforce or remind folks about the literacy requirement. We're not going to enforce it. Well, we have an existing, see, that's my question. We have an existing district court order that seems to me to say there are LMRDA violations in this election, but that some literacy requirement remains okay. So I'm not sure that we have a dispute on that in front of us. The only dispute in front of us seems to be whether there should be a supervised election, and if so, when. And so, you know, if you have a further fight with the secretary, the courts are open. But if our only job is to figure out when the supervised election should occur, if one should occur, then shouldn't we ask the district court in the first instance, which never had the opportunity to address any of this, and say look, the world has moved on, you can do one or the other and you consider the factors. I agree, Your Honor, that probably the district court ought in the first instance consider that, since these facts weren't before it because some occurred after she issued the order, all occurred after the motions for reconsideration were submitted. But I don't want to leave my argument, leave the impression that we're still not pursuing this point, that we think when Mr. Treehill was disqualified for two reasons, both of those reasons, or only one of them, fits here. And I want to just take one minute and emphasize the literacy issue. Because the secretary brings this lawsuit, and the secretary's burden is to prove that Treehill was eligible. And we can see that the later investigation shows that Treehill could have produced the appropriate documents and could have produced his eligibility. We just say it wasn't timely, and I'll move on. But the bigger issue is the literacy here. Because we think the record is abundantly clear that he couldn't read English, that even the Department of Labor's investigator who talked with him said in his report that he had a lot of trouble reading English. The international investigator talked to him separately. He couldn't read English very well. And we think the literacy requirement was properly invoked to disqualify Mr. Treehill. Is that the issue? Let's assume that you have an unreasonable or an arbitrary literacy requirement. Somebody listens to you read something and decides on his own whether you've done well or not. And that's arbitrary and capricious. Is it okay if when later posed with a real literacy test, the person fails it? Yes. It's all irrelevant because it's the secretary's burden to prove that the conduct may have affected the outcome. And if Treehill wasn't eligible to serve as an officer, whether or not he was disqualified by a test that was correct or not or was accurate makes no difference. So let me give you a hypothetical. The election judge looks at Mr. Treehill and says, you don't look like you're literate to me. I'm disqualifying you. The secretary brings a suit and you later conduct discovery. The secretary brings a suit. Is it the burden of the secretary's suit to demonstrate that Mr. Treehill is literate? Yes, qualified. Even if the union test was applied arbitrarily and capriciously? Yes, because you'll note that in the investigation, the secretary always checks into the eligibility. I'm not asking what they do in the investigation. As a matter of law, if you have an arbitrary and capricious test, is it nonetheless the secretary's burden to show that the applicant would have passed a non-arbitrary and non-capricious test? You phrased it exactly. Yes, the secretary has to prove Mr. Treehill's eligibility to serve in the office, as they did with respect to the other test of his eligibility to serve because of his residency. They established that. It was just a question of whether the timing was correct. And I've got one more question on that front, if I can. The union constitution, I think, provides, or at least the procedures provide, I'm sorry, the statute provides that a candidate is presumptively eligible to seek office. Does that presumptive eligibility play into your analysis at all? Yes, because what happened here was we had each of the candidates fill out candidate questionnaires to create their presumptive eligibility. Mr. Treehill was filling out his questionnaire and checked the appropriate boxes on it. The problem was that in doing that, the election judges noted that he wasn't reading the form. It was being read to him by his friends. No, I understand the facts. The statute seems to provide that a candidate is presumptively eligible and is only ineligible if disqualified for some reason. And works seems to say that, too. So is it really the burden of the secretary to show actual eligibility or is it enough that someone is presumptively eligible because they're a union member? It's not enough simply because you're a union member because there are many qualifications that eliminate even union members. And there are plenty of cases in this circuit where the question of eligibility has been litigated and it's always been the secretary's burden to at least establish the eligibility or that the requirements were unfairly imposed. And I'd like to reserve some time for rebuttal here, but yeah. Now, we'll give you a couple minutes for rebuttal. Don't worry about that. Right. So I just want to conclude then by saying that we, again, are very clear. The secretary may supervise the election. We want our members to understand that we run fair elections and have the secretary there. It's fine with us. We welcome it. We welcomed it in 2018. Secretary declined. I just don't want to leave the impression that we think we were wrong in disqualifying Mr. Trio for not following our rules, which is you have to have your documents ready at the nomination meeting. And secondly, we discovered that he really wasn't literate and we can't have officers serve who at least don't have some basic literacy in English. Okay. Let me just check with Judge Pergerson. Do you have any questions for Mr. Rosenfeld before we hear from counsel for the secretary? No, I think you basically covered them. Well, I shouldn't say obviously. I'm concerned about the issue that, you know, there's no criteria at all for a literacy test and it seems completely arbitrary. Your Honor, if I may just respond briefly. You'll see in the record that when we took this deposition, we found this simple literacy test that the government used. We asked him to read certain sentences and explain them and he said he couldn't do it. There are literacy tests out there that are fairly simple. I can see they're probably better, at least less obviously a problem, than simply asking somebody to read the Constitution. So there are plenty of literacy tests available. We told the secretary, you pick any one. We're okay with it. We don't care. It's still our position. You find something. Right, but Mr. Trujillo was not given notice of what the literacy requirement was for the test. Your Honor, the or is correct. He was told that the literacy requirement was a requirement that was put in the election notice sent to him and everybody else. What wasn't told to him was if there's a question about it and somebody challenges your literacy, the union will have to investigate it. And the way they investigated it is they asked him to read something to see if he could read it. So we were clear with the members. You have to be literate. It's in our Constitution. It was in the election notice that was sent out. Everybody knew it. So I don't think we can be faulted for failing to notify people, and they had to expect to meet that qualification if a question was raised. Okay, thank you. Thank you. Thank you, counsel. Let's hear from counsel from the secretary now. Your Honor, Jennifer Utrecht on behalf of the Secretary of Labor. I'd like to begin, I think, by taking just a quick step back and addressing why it is that the secretary did not supervise the 2018 election. That's a large part of the opening argument. So when the secretary supervises an election, Section 482 provides that the secretary supervise election should perform as much as lawful and as practicable with the union constitution and bylaws. What sometimes happens, and which the secretary's position in 2018 is that if a union requirement would otherwise be unlawful or it would be impracticable for it to be complied with by the election, that requirement can be waived. And this court has upheld that discretion in the case I would point you to is Millwright's Local Union v. Carroll, 654-F2D-548, 9th Circuit. And so the secretary in 2018 explained to the union that there are potentially a number of problems in proposing a literacy requirement in a future election. That although the district court had held that a literacy requirement in the abstract is okay, there need to be specific objective standards. People need to be on notice as to what level of proficiency is necessary. That level of proficiency has to be tied to the importance of the position, especially in a union where a large portion of the membership is Spanish-speaking or primarily Spanish-speaking or not. And so there were steps that needed to be taken in order to ensure that whatever the literacy test that was imposed, it was imposed uniformly for all candidates. And that it was a specific objective that eligibility could be determined. And the 2018 election was coming up fast. The secretary was concerned that this sort of test would not be able to be developed in time and wanted to exercise its authority to waive this, the union refused. And so there wasn't a meeting of the minds on this. There wasn't an ability for the secretary to supervise that election. So let's assume for a moment that nobody faults the secretary for not supervising a previous election. Obviously, Mr. Rosenfeld does, but just assume that away for a second. I'm still trying to figure out what the secretary's position is with respect to what happens now. And it seems to me there's really only two alternatives. One is that an off-schedule election is held. And the other is that you supervise the 2021 election. And as I read your brief, you seem to suggest that the court wouldn't have the power simply to say you should supervise the 2021 election. Am I misreading it? So as a general matter, Your Honor, these supervised elections are supposed to happen not on the ordinary time schedule. Of course, you know, we agree that because of the problems taken, this is sort of not the ordinary case. I don't want to jump out in front of the secretary that, you know, waiting until the next supervise or to have to consult with them. I do know, however, that in many circumstances, including elections that have to happen this year, the secretary has been cooperating with unions to extend and waive those requirements because of the extraordinary circumstances right now. And that's obviously something that would play into. So let me cut to the bottom line on this issue. Then if we were to remand to the district court and say, look, a lot of things have happened since your last order. We agree that a supervised election has to take place. You have the discretion after listening to the parties to determine whether or not to do that in conjunction with the next regularly scheduled election. Would that be a remedy that the secretary opposed? I haven't. I haven't consulted with the secretary on this specific question, Your Honor. And what I can say is that the statute itself says that the election shall not be stayed pending. And it's strange for this court to order the election to push back even further. We're not ordering anything. What I'm saying is, as I read the cases in the other circuits, they say that the district court has some equitable powers here. If everybody agrees in the midst of a pandemic with an election scheduled only months away, it would be silly to conduct one and then have everybody elected subject to a new election within six months. And the district court orders that. It seems to me that's an appropriate remedy. But I want to make sure that it's not the secretary's position that the district court lacks that power, which is the way I think I read some of your brief. Well, Your Honor, I keep in mind that part of this brief was written several years back when the next supervised election would not have been within six months. Yes. So you're the secretary today. You represent the secretary. Is it your position that the district court has the power, not be required, but has the power, equitable power to schedule in remedy for for the violations found in this case to schedule a supervised election in 2021? If it does, we can send it back to the district court and say, listen, listen to Mr. Rosenfeld and Ms. Hustrecht, and you can decide whether or not you want to have one in between or then. If it doesn't have the power, we shouldn't send it back to the district court. So I want to know what your position is on the district court's power. I am not aware of anything that would prohibit the district court from asking the secretary to supervise the next election. However, I don't want to make a definitive statement because we're going to obviously an extraordinary circumstance. And I would not want to represent that in an ordinary case. It is appropriate for the district court to order the secretary to support the next election in advance. This is supposed to be a remedy that happens as soon as possible. Yeah. Hi, this is Judge Gregerson. Can I just jump in and ask a quick question here? So assuming that the district court has discretion not to decide whether to order an election or not, I think there's a sense of consensus that the statute requires that there be that the district court has no discretion. There has to be a new election in terms of part to the equitable considerations. It seems to me that arguably a district court would need more guidance than just consider equity, because what I see happening is big fights over the equitable considerations and discovery and who might have won and what the issues are. And pretty soon we have more delay. So it seems to me that any equitable considerations have to be instructed with the idea that the sort of policy behind requiring a new election, that it be done as soon as practicable and that it be done consistent with the goals of protecting the integrity of the process. So I guess I'm just shying away from the idea that the district court should be given unfettered discretion because I see that as being, you know, sort of a free for all at that point and resulting in more delay, which I don't think is the right answer. And I think the real question here, and this has been the secretary's position before, which is that, you know, with respect to the 2018 election, the secretary was willing to supervise the 2018 election, which we had viewed as sort of a settlement issue rather than something that the district court would order. We did not oppose the remedy that was sought by the union in the motion for reconsideration, in part because we were willing to do that. And so I hesitate to say that the district court has the discretion because we have always thought of this as something that the secretary could agree to and not necessarily something that the court could order. And I think in this circumstance, there may well be reason why the secretary might agree to that. I don't want to get out in front of that decision. But, of course, you know, any supervised election would have to comply with the LMRDA with the secretary's, you know, strong concerns that there need to be objective standards for literacy that are applied to everyone and that are tailored to the demands of the position. And that is going to require the union, as the secretary has provided guidance to the union after the order on reconsideration, going to require the union to develop a test that can be specific and objective and used for everyone. And that would be a critical part of any supervised election. Can I ask you about that? That point, Mr. Rosenfeld says. I don't want to put words in his mouth, but I'll recharacterize his argument. He says, well, even if the test we applied to Mr. Trujillo way back when wasn't appropriate. We've done discovery since and we've learned he's not literate. So it wouldn't have mattered. And it's your burden to show that he would have been eligible. And the judge has held that at least some literacy requirement is appropriate. What's your response to that? So it's not the secretary of labor's burden to show that Mr. Trujillo would have failed some yet to be undefined literacy requirement. It's our burden to show that this LRDA has set up as a presumption that all members in good standing are qualified to be officers subject only to reasonable qualifications that are uniformly imposed. And we have to closely scrutinize reasonable qualifications and view them in light of this democratic purpose of the statute that wants every member in good standing by default to have the potential to be an officer. And so what that means is, you know, if you're going to disqualify someone from being an officer, it has to be based on and the secretary's regulations lay out the number of things that go into figuring out whether a qualification is reasonable. It has to have specific and objective standards. It has to be uniformly imposed. It can't be, you know, an arbitrary, subjective thing that's subject to manipulation by incumbents. I hesitate to call it a test, but the test that was applied to Mr. Trujillo here fails all of those. Right. He was the only one who was asked to do this. I'm assuming I'm assuming that's right. I'm assuming that the test was unreasonable or arbitrary. Mr. Rosenfeld made an argument that I hadn't heard before, at least I hadn't received before, which is that, well, even if we had the best test in the world, he would have failed it. So harmless error. And it's your burden to demonstrate the absence of harmless error. So that's I'm asking you what what the law is on that. Yeah. So I don't think that's right. And I also think that even if it's important to point out that even if that's right, there's evidence in the record that Mr. Trujillo would make him wasn't totally illiterate. The election chair vigil declaration says Mr. Trujillo was capable of reading from the union constitution, but it was not a smooth and continuous reading. He had pronunciation errors. He made pauses. Right. So there's if there's questions about his literacy, it's a question of degree, not in totality. And, of course, for a qualification to be reasonable is the union's burden to show that the qualification is one that is specific and objective and tailored to the position doesn't disqualify membership unnecessarily. And we haven't seen anything like that here. We haven't seen what level of proficiency is required. We haven't seen that all candidates were subject to the same level of proficiency. And we haven't seen any explanation as to why that level of proficiency is actually tailored to the vice. I have one other question that relates to the equitable considerations here. Let's say that there we were to order a rerun election to be held tomorrow or next month. But we weren't going to wait for the next regularly scheduled election. Would would the secretary's supervision of that election be essentially the exact same kind of supervision that you could have exercised back for the 2018 election when you were given that opportunity? So. Right. So if there were to be I think it may be helpful to answer that question by just providing a little bit of background about what a supervised election looks like. If there is a supervised election that is ordered normally, you know, the secretary sets forth a time frame for that to happen because there's multiple steps, there's a nomination process, etc. The secretary tries to ensure or to be more specific, the person who is the election assigned election supervisor tries to ensure that that process is as close as possible to the way the union would do this in the ordinary course. And, of course, there's broad discretion in waiting certain requirements. There have been cases where unions have disputed this and taken it to court and evidentiary hearings. It's not always a clean process, but the secretary tries to because it's the department views supervised elections as an opportunity to work with unions to teach them about how the best way to do elections, which is supposed to carry on to future elections. And so there's your question was, would we have had the same powers to do that if we had chosen to supervise the election? Hold on. I just want you to focus in particular on the literacy requirement, right? What I'm asking is what I hear the union saying is that, look, we offered to you the opportunity to come in and supervise that. Is it the 2018 election? That was when you could have come in and and you refused because you wanted basically to have the literacy requirement wiped out altogether. You haven't pressed that argument before us. And that bothers me from an equitable standpoint, because it seems like now if we were to order a rerun election, all you would be doing is doing the exact same thing that you could have done back in 2018. But you played hardball and you lost. And so why should we be sort of solicitous of your secretary's concerns now? I think it's important to point out that the secretary was not attempting to play hardball in 2018. The secretary said there is no requirement that we supervise a regularly scheduled election. Right. And if we're going to, then, yes, we expect to be able to have all the same powers that we would in a supervised election, including waiving requirements that we think are impractical or unlawful. And the union would not allow the secretary to do that. So there was no meeting of the minds there in a future election. You know, if the secretary is to supervise it, the secretary is going to want to make sure that any literacy requirement complies with the demands of the LMRDA, that it has specific and objective standards. And if the union has not produced a test that meets those requirements by the time of the election, then, yes, the secretary is going to waive it because we are not going to supervise an election that we believe violates the LMRDA. And it's important to point out, because I believe Mr. Rosenfeld has said, you know, that we lost on this ground in the district court, and I do not read the district court's opinion in the way that he does. So if you look at the district court's initial order, the court said two things about the literacy requirement. It said that there were arbitrary things that were not specific and objective, and it was not uniformly imposed on everyone. In its reconsideration order, in a footnote, the district court said it would not waive the literacy requirement on the ground that the secretary had proposed, which was the literacy requirement was unlawful. So we know that a literacy requirement in the abstract is fine, but that whatever the literacy test is has to comply with the demands of the LMRDA. It has to be specific and objective. It has to be disclosed in advance. It has to be tailored to the position, all of the things that are listed in the secretary's regulations. But, counsel, they said to you, pick whatever you want. As long as you allow us to have a literacy requirement in 2018, you pick whatever the most objective, reasonable, you can supervise how it's applied, do everything you want with respect to that. And all I'm saying is that it seems like if we're going to have a rerun election next month, you're in the same boat. So respectfully, your honor, that the union has said that and the secretary has consistently communicated with the union, including, you know, after the reconsideration order, that it's not the department's position to make a test for the union. We we aren't the ones that would be unnecessarily intruding in union affairs. We aren't the ones who are on the ground and capable of knowing what level of proficiency is necessary for the vice presidential position. And we aren't the people you know, we what our job is, is to make sure that what they have developed is reasonable. And we have sent the union specific guidelines as to the sorts of things that whatever test they pick should have. And it can't just be a test that is pulled off the Internet. It has to be a test that is actually tailored to the position because it has to serve this position. We don't want to unnecessarily disqualify members. And so if this court were to say supervised election must happen, then, yes, what would happen is the secretary would begin this process with union, as we tried to do in 2018. And say, you know, a test needs to be developed. It has to. You know, there are consulted firms who work with people, corporations, unions to develop tests that are actually tailored to the positions. If you have one, you can explain to us why it is that this test is tailored to the position. Is it unnecessarily going to disqualify people that let's have an election? If you can't do that, then we're going to try and waive this requirement because it would be unlawful to have an election that did not meet with these. All right. Thank you, counsel. Do either of my colleagues have any further questions of the secretary's counsel? I just have one. And this is what this case benefit from mediation. I hate to ask you a union whether or not it wants mediation, but it's it sounds to me like the question in this case is really whether you can work out the details of a supervised election. If I'm not, you don't have to tell me the answer to that. I just raised the question for you both to consider. I would, of course, the question back to the agency. I, I know that our general position is that we would like to work with union. I, this case has been around for a long time. So I'm not. Yes. Here are likely been batted around quite a bit, but it's not a demand. It just strikes me that you're not very far apart. Hi, this is Judge Ferguson. I have my phone on mute here. I have one quick just follow up comment. Is that OK? But it's certainly fine by me. So it just it just. You're fine. OK, thank you. I'm just hard telephonically. You know, it seems to me that maybe the secretary isn't adequately emphasizing the fact that the purpose of the M. RDA here is to, you know, to have a certain hammer over union affairs moderated by the very important policy decision of, you know, obviously avoiding being involved in this absolutely necessary. But that hammer is important in cases where there might be monkey business. And whether it was here or not, I'm just I'm just commenting generally with an election. And that hammer really is that you eliminate discretion to avoid a non regularly scheduled election. And that you do so and you require that election as soon as practicable. If you don't have that requirement in terms of the sort of equitable considerations, then there's no guidance and no sort of deference to the overriding purpose of the L.M.R.D.A. And when I asked you earlier, to me, it seemed important that the idea that we just apply equitable considerations is fraught with. A sort of lack of guidance, because it just invites the sort of thing as a district court that I see where everybody fights over every issue. And we're months and months and months and months down the road. So it needs to be you know, it needs there needs to be provided some guidance in that regard. So and this idea of sort of flipping the burden potentially of placing the secretary in a position of having to come up with criteria, at least arguably, you know, seems to not be consistent with the L.M.R.D.'s purpose. L.M.R.D.A.'s purpose. And maybe the secretary can just comment on my observations. So, Your Honor, I would absolutely agree that the overriding purpose of the L.M.R.D.A. is to have the secretary step in only when necessary, when there has been some demonstrated issue and to generally stay out of union affairs. And so developing a test for the union would be absolutely inappropriate. You know, our position is that if we are going to supervise an election and the L.M.R.D.A. requires, you know, for these kinds of issues to be a new supervised election, if we're going to supervise the election, we are going to do so in a way that help that we believe ensures that there are no problems with the way the election is run and whether it conflicts with the L.M.R.D.A. And so I think Your Honor demonstrated the balance quite well in this question, which is we aren't in the business of developing qualifications for the union. We are in the business of ensuring that whatever those qualifications are, they are imposed. They are reasonable. They are applied in a reasonable manner and they are uniformly imposed. And that is what our job is during an election. And so what that means with respect to something like the literacy requirement is we won't develop, we can't develop a test for the union because it's not really our place to say, you know, what the necessary demands are, what a union thinks the important purposes are of this literacy test. But we are in a place to say, OK, well, is the test that you have selected, is that the kind of thing that's going to unnecessarily disqualify huge swaths of membership from becoming potential officers? And that is the sort of thing that the L.M.R.D.A. discourages. We want membership to have a free democratic choice of potential candidates for office. So I do have another question. I apologize, Judge Watford. And what do you want us to do? Affirm the district court's order. Affirm the district court's order and then leave it up to the secretary in the union about when the next election is scheduled. When the supervised election is scheduled. The district, the district court's order appropriately found that there was a violation and that there should be a new supervised election. The secretary has attempted to try and run that new supervised election if necessary. You know, any enforcement or things that if there are further delays, if necessary, you know, there are measures in the district court that we can take. But all the court needs to do as far as the secretary is concerned is affirm the district court's order. Right. But then what then I might know what then happens. The secretary in the union then confer on when the supervised election should occur. That is. Yes, that is my understanding. The election supervisor will reach out to the union and will schedule the start of this process. Right. And the process may result in it occurring in conjunction with the 2021 election or it may not, depending on. OK, thank you. Thank you, counsel. Let's put two minutes on the clock. Thank you. I want to respond to this monkey business issue only to point out that we conducted the 2018 election. The secretary thoroughly investigated and found no problem. No monkey business in the way we conducted that election. And this wasn't monkey business. It had to do with some requirements of our Constitution that we thought we were enforcing against the one individual who didn't comply. This is Judge Ferguson. I thought I made it clear that I was talking in the abstract. And, you know, if that didn't come through, that was my intention. We were talking hypothetically, at least I was, about the sort of bigger policy issues. True. But I wanted to say that only because I think the fight in this case is preserving our right to say to a worker, you. It appears to us you can't read English and use a relatively informal test, which we've used in the past. We say, here's our Constitution. Read it. And we lean over backwards to let people qualify. That's what Bob added. But the district court found that that test was arbitrary, without standards and capricious. So you may have thought it may have done it in good faith, but you lost that part of the case. You want to you want us to rule on that? We can. But I'm inclined to think the district court was correct. So now the question is, what test, if any, do you apply at the next election? So council refers to they're referring they refer us to EEOC guidelines having to discrimination, not with qualification to be a union officer. Remember, this is only one office vice president. The election is not that the court is not to rerun all the offices. Just this one office, which, of course, places a burden on us to have everybody come down and vote in one office. And having said that, again, we told the secretary in 2018, any test you find is OK with us. Any test. And if council wants the burden on us to do it, we'll just find more tests, give them to the department and say, you choose which test you want to use and go ahead and use it when you supervise the election. And we invite that in 2021, which gives the parties plenty of time to find something if they can't. I guess we go back to the district court and let the district court tell us which test to use. But we don't want to abandon that requirement. It's important to this union to have literacy. Just one final point that this all rose in summary judgment. So what the court missed was the fact that there's a real disputed issue fact whether Trujillo is literate or not. We thought the record proved he wasn't literate if the secretary's investigator agreed to that. And we think we probably disqualified him putting aside the test because ultimately discovery showed he wasn't literate. So we asked that the district court's order not be affirmed, but the matter be remanded to the district court. The direction either not to conduct an election because the secretary was offered the opportunity or to conduct an election in conjunction with our 2021 election. And we advise the secretary no matter what happens in this case to come supervise the election. We win. The secretary is welcome to come. Okay. Thank you, counsel. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted.
judges: Watford, Hurwitz, Pregerson